UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARAH, LLC and SCB INTERNATIONAL HOLDINGS, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-2794-B |
| MUELLER-BROWN MILLING SOLUTIONS LLC and DAVID BROWN, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Set Aside Clerk's Entry of Default (Doc. 11). Because the Court concludes that Defendants were not properly served, the Court **GRANTS** the motion (Doc. 11) and **VACATES** the Clerk's entry of default (Doc. 10). Moreover, the Court **DENIES** Plaintiffs' request for attorneys' fees set forth in their response brief (Doc. 13) and **ORDERS** Defendants to respond to Plaintiffs' complaint within twenty-one days of the date of this Order.

### I.

### BACKGROUND

This is a contract dispute arising from Plaintiff Charah LLC's and Plaintiff SCB International Holdings, LLC's purchase of commercial mills from Defendant Mueller-Brown Milling Solutions, LLC. *See* Doc. 1, Compl., ¶¶ 3, 6–7. Based upon alleged defects in the mills purchased, Plaintiffs bring claims against Mueller-Brown and its President, David Brown, for: (1) breach of contract;

(2) breach of the implied covenant of good faith and fair dealing; (3) fraudulent misrepresentation; (4) fraudulent nondisclosure; and (5) negligent misrepresentation. *Id.* ¶¶ 6–7; 114–178.

Plaintiffs filed their complaint on November 22, 2019. *See generally id.* Further, on December 16, 2019, Plaintiffs filed proof of service for both Defendants. *See* Doc. 8-1, Proof of Service, 3; Doc. 8-2, Proof of Service, 3. The proof of service upon Brown indicates that the server "personally served" Brown. Doc. 8-1, Proof of Service, 3. And the proof of service upon Mueller-Brown indicates that by serving Brown, the process server also served Mueller-Brown, as Brown "is designated by law to accept service of process on behalf of" Mueller-Brown. Doc. 8-2, Proof of Service, 3.[1]

On December 19, 2019, Plaintiffs moved for an entry of default, and the following day, the Clerk of Court entered default against Defendants. Doc. 9, Pls.' Mot. for Entry of Default; Doc. 10, Clerk's Entry of Default.

Nearly two months later, Defendants moved to set aside the entry of default, asserting, among other arguments, that they were not properly served. Doc. 11, Defs.' Mot., 1. Thereafter, Plaintiffs responded in opposition. Doc. 13, Pls.' Br. Defendants did not file a reply brief, and the time to do so has passed. Accordingly, Defendants' motion is now ripe for review.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Good cause "is not susceptible of a precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to

---

[1] The Court further details the facts surrounding the purported service of process of Defendants in the Court's analysis below. *See infra* Section III.A.

answer a complaint timely." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992). That is why the "good cause" standard is liberally construed. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).

To determine whether a defendant has shown good cause in a Rule 55(c) motion, a court should consider the following factors: (1) whether the default was willful; (2) whether the plaintiff would be prejudiced; and (3) whether the defendant presents a meritorious defense. *Dierschke*, 975 F.2d at 184. The court need not consider all of these factors. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). Ultimately, "[t]he decision to set aside a default decree lies within the sound discretion of the district court." *Id.* (quoting *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985)).

Nonetheless, if the district court lacks personal jurisdiction over the defendant due to improper service of process, the court "must set aside the clerk of court's entry of default as a matter of law." *Titan Global Holdings, Inc. v. Evan*, 2008 WL 11435706, at *4 (N.D. Tex. Oct. 30, 2008).

The Court favors resolving actions on the merits and therefore will resolve any doubts in favor of the defendants. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (citation omitted) (observing that "federal courts should not be agnostic with respect to the entry of default judgments which are 'generally disfavored in the law'"); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (citation omitted) ("[W]here there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits.").

III.

ANALYSIS

In their motion, Defendants assert that the Court must set aside the entry of default because they were not properly served. Doc. 12, Defs.' Br., 3–5. Alternatively, they contend that they have demonstrated good cause for setting aside the entry of default. *Id.* at 5–10.

Plaintiffs, on the other hand, contend that Defendants were properly served, and that the Court lacks good cause for setting aside the Clerk's entry of default. Doc. 13, Pls.' Br., 1–2. Moreover, Plaintiffs suggest that, in the event that the Court sets aside the entry of default, the Court should award Plaintiffs attorneys' fees and costs incurred in drafting a yet-to-be-filed motion for default judgment. *Id.* at 11 n.1. Similarly, Plaintiffs also ask the Court to impose a fourteen-day window for Defendants to respond to their complaint if the Court sets aside the entry of default. *Id.* at 12–13.

As explained below, based upon the unresolved factual disputes regarding service of Defendants, the Court concludes that Defendants were not properly served and thus sets aside the entry of default.[2] Further, the Court denies Plaintiffs' request for attorneys' fees and orders Defendants to respond to the Complaint within twenty-one days of the date of this Order.

A. *Whether the Court Must Set Aside the Entry of Default Based on Insufficient Service*

The first issue before the Court is whether Plaintiffs properly served Defendants. Plaintiffs contend that Defendants were properly served via service of process effectuated upon Brown. Doc. 13, Pls.' Br., 6–9.[3] Plaintiffs rely upon their returns of service, see Doc. 8-1, Proof of Service, 3, and

---

[2] Consequently, the Court need not address Defendants' arguments pertaining to good cause.

[3] Defendants do not dispute that proper service of both Defendants hinges upon service of Brown. *See generally* Doc. 12, Defs.' Br.

Doc. 8-2, Proof of Service, 3, to provide a presumption of valid service of process. Doc. 13, Pls.' Br., 7. Further, though Plaintiffs do not dispute that their process server failed to hand Brown the papers, Plaintiffs argue that Defendants were nonetheless "properly served under Texas law" because "Brown denied his identity and refused to accept service after he was informed that [the process server] was there to serve process[.]" *Id.* at 6. Moreover, Plaintiffs explain the circumstances surrounding the service of Brown by attaching an affidavit from the process server, David Dreiling. *See* Doc. 14, Decl. of David Dreiling.

In his affidavit, Dreiling explains that on November 26, 2019, he first tried to serve Defendants at their business address. *Id.* ¶¶ 4–5. Since Dreiling could not find Brown or another employee to accept service for Mueller-Brown Milling, Dreiling proceeded to Brown's home. *Id.* ¶ 6. Dreiling arrived there "shortly after 8:00 pm." *Id.* When Dreiling rang the doorbell of the home, a man answered the door. *Id.* ¶ 8. When Dreiling told the man that he "was there to serve process" and "was looking for David Brown," the man told Dreiling that he had "the wrong house, brother," and that David Brown "doesn't live [there]." *Id.* ¶ 9. The man thereafter "closed the door in [Dreiling's] face." *Id.* Subsequently, Dreiling returned to his vehicle and searched for Brown on LinkedIn. *Id.* ¶ 10. Dreiling found a LinkedIn profile for a man named David Brown, who identified himself as the CEO of Mueller-Brown Milling Solutions. *Id.* (citing Doc. 14, Ex. A). Upon seeing that the profile's photo matched the face of the man Dreiling had just encountered, and confirming that the pickup truck in the driveway was registered to David Brown, Dreiling "returned to the door and left the package containing the summons and complaint in a conspicuous and appropriate place in front of the door where [Brown] was likely to find [it.]" *Id.* ¶¶ 12–13.

Defendants, however, offer two affidavits suggesting that Brown could not have been at home

around 8:00 pm on the evening in question. In the first affidavit, Brown explains that on November 26, 2019, he traveled to McAlester, Oklahoma to oversee maintenance on a milling plant. Doc. 12-1, Affidavit of David Brown, ¶ 3. He states that he spent most of his day with Carl Foley, the maintenance supervisor of the plant. *Id.* ¶ 4. Further, Brown indicates that his contractors finished performing maintenance around 7:30 p.m., at which point Brown's "team left McAlester," and Brown began driving from McAlester to Fort Worth, Texas—a drive lasting, according to Brown, at least three hours and fifteen minutes. *Id.* ¶¶ 4–5. Brown states that he arrived home in Fort Worth around 11:00 p.m. *Id.* ¶ 6. While he was home, Brown indicates, he "did not personally receive or accept any documents, nor was there any attempt to serve documents on [him.]" *Id.*

To corroborate Brown's affidavit, Defendants also submitted an affidavit from Carl Foley. In his affidavit, Foley states that on November 26, 2019, he "spent most of the day working with David Brown" in McAlester. Doc. 12-2, Affidavit of Carl Foley, ¶¶ 2–3. Further, he states: "We worked straight through the evening until approximately 7:30 P.M. At that time, David Brown [and his contractors] left the plant to return to Texas." *Id.* ¶ 3.

In response to these affidavits, Plaintiffs point out some "inconsistencies and unanswered questions" in Brown's and Foley's statements. *See* Doc. 13, Pls.' Br., 8. For instance, Plaintiffs point out that Brown does not state that he worked until 7:30 p.m.; rather, he states that his "*contractors*" worked straight through the evening. *Id.* (emphasis in original). This characterization, Plaintiffs contend, contradicts Foley, who allegedly implied that he and Brown worked until 7:30 p.m. *Id.* Further, Plaintiffs note that Brown technically states his "team"—rather than Brown himself—left McAlester at 7:30 p.m. *Id.* Finally, Plaintiffs assert that Defendants have not provided any explanation for Dreiling's encounter with the man at Brown's home. *Id.* In light of these gaps,

Plaintiffs conclude, Defendants have not rebutted the presumption that Brown was properly served. *Id.* at 8–9.

As a preliminary matter, the Court sets forth the applicable law with respect to service of process. Federal Rules of Civil Procedure 4(e)(1) and 4(h)(1)(A) permit parties in federal court to serve an individual, as well as a business association, in accordance with state law. Under Texas law, a plaintiff may effectuate service upon a defendant by personal service. *Ellibee v. Leonard*, 226 F. App'x 351, 356 (5th Cir. 2007) (per curiam) (citing Tex. R. Civ. P. 106(a)). Moreover, Texas law provides that "[g]enerally, a person within the jurisdiction of a court has an obligation to accept service of process when it is reasonably attempted." *Red Hot Enters., LLC v. Yellow Book Sales & Distrib. Co., Inc.*, 2012 WL 3025914, at *2 (Tex. App.—San Antonio July 25, 2012, no pet.) (citations omitted). Accordingly, courts may find that a "[a] defendant who refuses to physically accept the process papers" has "been personally served as long as the return affirmatively shows the papers were deposited in an appropriate place in his presence or near him where he is likely to find them, and he was informed of the nature of the process and that service is being attempted." *Id.* (citations and quotations omitted).

"[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Typically, a plaintiff may satisfy this burden by "producing the process server's return of service, which is generally accepted as *prima facie* evidence of the manner in which service was effected." *Nabulsi v. Nahyan*, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009) (citation omitted), *aff'd*, 383 F. App'x 380 (5th Cir. 2010) (per curiam).

Here, the Court holds that Plaintiffs have not satisfied their burden of demonstrating proper

service. Though Plaintiffs have offered *prima facie* evidence of personal service through the returns of service, see *id.*, Defendants have offered evidence—Brown's and Foley's affidavits—rebutting the presumption of personal service. Though the Court recognizes that, under Texas law, Dreiling's placement of the summons and complaint on Brown's doorstep could be a proper form of service, this method is only proper if Brown "refuse[d] to physically accept the process papers" when Dreiling arrived around 8:00 p.m. *See Red Hot Enterprises*, 2012 WL 3025914, at *2 (citations and quotations omitted). But the testimony of Brown and Foley, if true, proves that Brown was not home, and thus unable to refuse service of process, around 8:00 p.m.

Further, Plaintiffs do not carry their burden of establishing proper service by pointing out mere technical inconsistencies in the affidavits of Brown and Foley. Though the Court is suspicious of the veracity of the affidavits in light of Defendants' failure to provide an explanation for Dreiling's testimony, which suggests that he encountered Brown, this suspicion is just that—a suspicion. Considering that the burden rests with Plaintiffs to demonstrate proper service and resolving all doubts in favor of Defendants, the Court holds that Plaintiffs did not effectuate proper service upon Brown. Because Defendants were not properly served, this Court **GRANTS** Defendants' motion and **VACATES** the Clerk's entry of default. *See Titan Global Holdings, Inc.*, 2008 WL 11435706, at *4.

B.  *Whether Plaintiffs Are Entitled to Attorneys' Fees*

In their response, Plaintiffs seek to recover attorneys' fees and costs accrued in preparing a motion for default judgment. Doc. 13, Pls.' Br., 11 n.1. In support of this request, Plaintiffs state only that "[s]uch an award is warranted in order to remedy the prejudice suffered by Plaintiffs." *Id.* Given that Plaintiffs fail to cite to any authority compelling this Court to award attorneys' fees under these circumstances, the Court **DENIES** Plaintiffs' request.

C. *Whether Defendants Must Answer Plaintiffs' Complaint Within Fourteen Days*

Finally, Plaintiffs request that the Court afford Defendants no more than fourteen days from the date of this Order to respond to their complaint. *Id.* at 12–13.

As an initial matter, the Court must first address proper service of Defendants. Though Defendants were not properly served, Defendants have agreed to waive service of process under Federal Rule of Civil Procedure 4(d) in the event that the Court vacates the Clerk's entry of default based upon improper service of process. *See* Doc. 16, Defs.' Resp., 1. Because the Court vacates the entry of default, Defendants have waived service. In light of this waiver, the Court need not order Plaintiffs to properly serve Defendants.

As to Defendants' deadline to answer, Defendants have agreed to file a response within twenty-one days of this Order. *Id.* at 1–2. The Court finds no compelling reason or authority to order Defendants to answer more swiftly than the standard twenty-one day deadline for filing responsive pleadings imposed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Accordingly, the Court **ORDERS** that Defendants file a responsive pleading to Plaintiffs' complaint within twenty-one days of the date of this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion (Doc. 11) and **VACATES** the Clerk's entry of default (Doc. 10). Further, the Court **DENIES** Plaintiffs' request for attorneys' fees set forth in their response brief (Doc. 13) and **ORDERS** that Defendants file a responsive pleading to Plaintiffs' complaint within twenty-one days of the date of this Order.

SO ORDERED.

DATED: April 7, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE